# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| TRISHA KIMZEY ET AL | CIVIL ACTION NO: 16-CV-01490 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| PREMIUM CASING EQUIPMENT, LLC | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Before the Court is an appeal filed by Appellants, Trisha and Tyler Kimzey ("the Kimzeys"), unsecured creditors in the matter of In Re: Kimzey Casing Service, LLC. [Record Doc. 1]. The Kimzeys appeal an order issued by the United States Bankruptcy Court, Western District of Louisiana, which allowed an administrative expense claim filed by the Appellee, Premium Casing Equipment, LLC ("Premium"). For the reasons assigned herein, the order of the Bankruptcy Court is **AFFIRMED**.

## BACKGROUND INFORMATION

On October 16, 2015 ("petition date"), Kimzey Casing Service, LLC ("KCS" or "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. [Record Doc. 4, Bankr. Doc. 1].[1] [2] After the petition date, KCS operated its business until December 18, 2015 ("sale date"), when the majority of KCS'

---

[1] "Record Doc." refers to the District Court docket. "Bankr. Doc." refers to the Bankruptcy Court docket.

[2] On February 5, 2016, after the issues relevant to this appeal occurred, the bankruptcy was converted to a Chapter 7 matter. [Bankr. Doc. 21].

assets were sold to TRK Enterprises, Inc. ("TRK") at an auction authorized by the Bankruptcy Court. Premium leased specialized oilfield equipment, CRTis, to KCS.[3] The leased equipment at issue was not sold or assigned to TRK as part of the sale.

Following the sale, Premium filed a motion seeking the allowance of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) for post-petition lease payments due on the equipment from the date of KCS' petition to the sale date. [Record Doc. 4, Bankr. Doc. 42]. Premium argued that the lease payments in question were actual, necessary costs and expenses of preserving the bankruptcy estate of KCS. The Kimzeys objected to the claim. [Record Doc. 4, Bankr. Doc. 46 and 66]. The Bankruptcy Court allowed an administrative expense claim in the amount of $57,752.93 against KCS. The issue on appeal is whether the Bankruptcy Court properly determined that the rental charges for the equipment were actual, necessary expenses for the preservation of the Debtor's estate such that Premium is entitled to a priority claim under 11 U.S.C. § 503(b)(1)(A) and 11 U.S.C. § 507(a)(2).

**A.   Stipulated Facts of the Case**

The parties agreed to stipulated facts and presented them to the Bankruptcy Court. [Record Doc. 4, Bankr. Doc. 65]. The Bankruptcy Court relied solely on the stipulated facts to reach its decision. Accordingly, the relevant stipulated facts are provided herein.

KCS provided oil field services, principally casing work, for owners and operators of oil and gas properties in two general areas: (a) Colorado and Wyoming (the

---

[3]   A CRTi is a piece of equipment used in connection with the casing of a drilled oil well. Casing forms the structure through which the oil is pumped from the ground.

"Colorado Division"), and (b) Ohio, Pennsylvania, and West Virginia (the "Pennsylvania Division"). [Record Doc. 3, Bankr. Doc. 65 ¶ 1]. From the filing of the bankruptcy petition through the sale of most of KCS' assets to TRK, Robert Fullop ("Fullop") was the President of KCS. Id. at ¶ 4. Fullop was knowledgeable about the details relating to all aspects of KCS' business, and conducted daily operations meetings with KCS business managers and facility supervisors. Id. The meetings reviewed and discussed safety, sales, operations, equipment, and maintenance matters at all KCS facilities. Id. Ryan Maupin ("Maupin"), a Director in Grant Thornton's Corporate Advisory & Restructuring practice, was appointed Interim Chief Executive Officer for KCS from the filing of the bankruptcy through the sale of the majority of KCS' assets to TRK. Id. at ¶ 5. During the time between the petition and the sale, Kyle Mascarenas ("Mascarenas") was the business unit manager for KCS in the Colorado Division, and was in charge of all of the persons who worked for the KCS Colorado facility. Id. at ¶ 6. During the same period of time Jordan Beckner ("Beckner") was the business unit manager for KCS in the Pennsylvania Division, and was in charge of all of the persons who worked for the KCS Pennsylvania facility. Id. at ¶ 7. Mascarenas and Beckner reported directly to Fullop. Id. at ¶ 8. Fullop reported to Maupin. Id. at ¶ 9.

All KCS equipment in Pennsylvania was stored at the Pennsylvania facility when not in use. Id. at ¶ 10. All KCS equipment in Colorado was stored at the Colorado facility when not in use. Id. at ¶ 11. A Volant CRTi is a tool that is used to perform some of the services that KCS offered to customers in both the Colorado and

3

Pennsylvania divisions.[4] Id. at ¶ 12. On the date of the bankruptcy filing, KCS leased three pieces of specialized equipment from Premium under a lease agreement dated October 1, 2012, for a total rental amount of $25,000 per month. Id. at ¶ 14. The leased items were (i) a Volant CRTi-3-700 and related components, and a Volant CRTi-2-5.50 and related components for $23,200 per month ("Leased CRTis"), and (ii) drill pipe tong model HSZ-125Y, master and backup, jaws for drill pipe 4.5", 5", 5.5", 6 5/8" and lift cylinder of Chinese origin for $1,800.00 per month. Id.[5]

At the time that the bankruptcy case was filed, KCS had four Volant CRTi-5.5 devices at the Pennsylvania facility. Id. at ¶ 15. Three of the four Volant CRTi Devices located in the Pennsylvania Division were owned by KCS. Id. The fourth Volant CRTi was one of the pieces KCS leased from Premium. Id. At the time that the bankruptcy case was filed, KCS had four Volant CRTi devices at the Colorado Facility. Id. at ¶ 16. Three of the four Volant CRTi Devices located in the Colorado Division were owned by KCS. Id. The fourth Volant CRTi was leased by KCS from Premium. Id.

Shortly after KCS filed for bankruptcy on October 16, 2015, Fullop and Maupin together determined that KCS needed to continue leasing the Leased CRTis from Premium. Id. at ¶ 17. This determination was based on Maupin and Fullop's combined

---

[4] The last portion of the Volant CRTi description designates the diameter of the pipe that the CRTi can be used to manipulate. For example, a Volant CRTi-5.5 is used for 5.5 inch pipe. Id. at ¶ 12. A Volant CRTi attaches to the bottom of the top drive and is inserted into the casing, from which the Volant CRTi is expanded to contact the inside of the casing. Id. at ¶ 13. The Volant CRTi is then manipulated to rotate the string of casing. Id.

[5] The drill pipe tong is not at issue in this appeal. Premium did not seek an administrative expense for the drill pipe tong rental. Id. at n. 1.

4

business judgment, which was exercised in good faith. Id. Fullop and Maupin's business judgment was based on their knowledge of the then-current and expected use of the Volant CRTis, the risk of losing revenue and critical customers if the Company ran short of equipment, the related risk of destroying the Company's enterprise value while it was being marketed for a section 363 auction, and the significantly higher cost of renting similar tools elsewhere. Id. at ¶ 18. Accordingly, both Fullop and Maupin believed that retaining the lease of the Leased CRTis was an actual and necessary expense of preserving the KCS estate's value. Id.

After the filing of the bankruptcy case, neither Fullop nor Maupin ever instructed Mascarenas or Beckner as to which Volant CRTi to use on a particular job. Id. at ¶ 19. However, Mascarenas instructed his employees in the Colorado Division not to use a Leased CRTi. Id. at ¶ 20. Likewise, Beckner instructed his employees in the Pennsylvania Division not to use a Leased CRTi. Id. at ¶ 21. At no time from the filing of the bankruptcy petition through the sale of the majority of KCS' assets were either of the Leased CRTis used on a job. Id. at ¶ 22. The Leased CRTis were not used in any manner that produced revenue for KCS. Id. at ¶ 23. The Leased CRTis were not used by KCS to perform all or part of any job for any customer. Id. at ¶ 24. Neither of the Leased CRTis produced any revenue for KCS, earned any revenue for KCS, or created any right for KCS to seek payment from any person. Id. at ¶ 25.

The majority of KCS' assets were sold to TRK on December 18, 2015, by order of the Bankruptcy Court. Id. at ¶ 26. Pursuant to the bid procedures established by the Bankruptcy Court, TRK submitted a bid for those assets of KCS that TRK wished to

purchase, and those leases that TRK wished to acquire. Id. at ¶ 27. TRK's bid did not include the Leased CRTis. Id. at ¶ 28. The bid did not seek to assume the lease of either of the Leased CRTis or the assignment of such leases to TRK. Id. at ¶ 29. KCS did not file a motion to assume the lease with Premium. Id. at ¶ 30. On December 18, 2015, KCS filed a motion to reject a number of leases, including the lease with Premium that included the Leased CRTis. Id. at ¶ 31.[6] That motion was granted by order of the Bankruptcy Court on December 29, 2015. Id.

## B. Decision of the Bankruptcy Court

On October 4, 2016, following a hearing, the Bankruptcy Court entered an order granting Premium's claim for an administrative expense of $57,752.93 for the leased CRTis. [Record Doc. 4, Bankr. Doc. 81]. Administrative expenses are allowed priority payment from the bankruptcy estate when the expense is an actual, necessary cost of preserving the estate. 11 U.S.C. § 503(b)(1)(a). The Bankruptcy Court held that the equipment lease expenses for the CRTis qualified as an administrative expense under section 503(b)(1)(a). In reaching this decision, the Bankruptcy Court noted that the term "necessary" as applied by the Fifth Circuit is defined by whether or not the expense benefitted the estate. [Record Doc. 6, Bankr. Doc. 101]. The Bankruptcy Court noted that the term "benefit" does not require actual use of the equipment at issue if the business derived some other benefit from its retention. Id. The Bankruptcy Court also noted that KCS, through Fullop and Maupin, exercised its business judgment in

---

[6] The trustee is required to perform all obligations of the debtor arising 60 days post petition, including the performance of all obligations under a lease agreement until the lease is assumed or rejected. 11 U.S.C. § 365(d)(5).

6

making a conscious decision to retain the leased equipment. The Bankruptcy Court noted that the stipulated facts contained the basis for KCS' decision to retain the equipment, and quoted the following stipulated passage during the hearing:

> The business judgment was based on their knowledge of the then current and expected use of the Volant CRTis, the risk of losing revenue and critical customers if the company ran short of equipment, and the related risk of destroying the company's enterprise value while it was being marketed for a section 363 auction [].

[Record Doc. 6, Bankr. Doc. 101 (citing Stipulated Fact ¶¶ 17-18)]. The Bankruptcy Court relied on In re ATP Oil & Gas Corp., No. 12-36187, 2014 WL 1047818 (Bankr. S.D. Tex. March 18, 2014), in determining that it was appropriate to consider KCS' business judgment decision in its consideration of whether an expense benefitted the estate. The Bankruptcy Court stated:

> [T]his Court will not second guess that business judgment if it falls within the range of reasonableness, and having – the stated reason having equipment in stock to handle potential business that may come through, the Court finds it falls within that range of reasonableness.

[Record Doc. 6, Bankr. Doc. 101]. Thus, the court held that the leased equipment was a benefit to the estate and was an appropriate administrative expense. The order allowing the administrative expense claim of $57,752.93 was entered on October 11, 2016. [Record Doc. 4, Bankr. Doc. 84]. The Kimzeys timely appealed the order to this Court.

## JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). In re ASARCO, LLC, 650 F.3d 593, 599 (5th Cir. 2011).

## STANDARD OF REVIEW

In reviewing a decision by the Bankruptcy Court, this Court applies the standards of review generally applied in federal appellate courts. In re Webb, 954 F.2d 1102, 1103-04 (5th Cir. 1992). This Court reviews legal conclusions de novo, and the Bankruptcy Court's findings of fact for clear error. In re ASARCO, LLC, 702 F.3d 250, 257 (5th Cir. 2012).

## LAW AND ANALYSIS

Administrative expense claims are governed by 11 U.S.C. § 503(b)(1)(A), and generally arise from voluntary transactions between third parties who provide goods or services to the bankruptcy estate. The purpose of section 503 is to permit a debtor's business to continue to operate for the benefit of pre-petition creditors. In re TransAmerican Natural Gas Corp., 978 F.2d 1409, 1415 (5th Cir. 1992). For the successful reorganization of a business to occur, third parties must be willing to provide goods and services on credit post petition to enhance the likelihood of a successful reorganization. Id. at 1416. Pursuant to 11 U.S.C. § 507(a)(1)(C), it is established that administrative expenses incurred in a bankruptcy proceeding are to be given priority in distribution, such that they are generally paid in full before other unsecured non-priority claims. In re Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001).

Administrative expenses include the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Whether a particular expense is an "actual and necessary" cost is a question of fact determined by the Bankruptcy Court after notice and a hearing. Id.; In re ATP Oil & Gas Corp., 2014 WL 1047818, at 3. As

used in section 503, "the words 'actual' and 'necessary' have been narrowly construed; the debt must benefit the estate and its creditors." In re TransAmerican, 978 F.2d at 1416. An "actual or necessary cost" is one that has conferred a benefit upon the bankruptcy estate. In re H.L.S. Energy Co., Inc., 151 F.3d 434, 437 (5th Cir. 1998). The term "benefit" is not found in the bankruptcy code. It merely serves as a method of testing whether an expense was necessary to the estate; if there is no benefit, the expense was not necessary. In re Texas Pellets, Inc., No. 16-90126, 2017WL6508974 (Bankr. E.D. Tex. Dec. 19, 2017). The term "benefit" "is not restricted to goods or services that lead to a direct economic enhancement of the estate." Id. (citing In re H.L.S. Energy, 151 F.3d at 438). "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." In re TransAmerican, 978 F.2d at 1420.

The burden of proof that a claim was an actual or necessary expense of preserving the estate falls to the applicant claiming the administrative expense. Id. at 1416. "A prima facie case under section 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods and services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern." Id. After the creditor has established a prima facie case, the burden of producing evidence against the claim moves to the objector. Id. The

9

burden of persuasion by a preponderance of the evidence always remains with the movant. Id.[7]

Appellants argue that Premium cannot establish a prima facie case necessary to claim an administrative expense because a preexisting lease cannot be considered a transaction with a debtor-in-possession. This Court disagrees. Case law throughout the country indicates that administrative claims are routinely asserted based on equipment leases existing pre-petition. See In re Pettingill Enterprises, Inc., 486 B.R. 524 (Bankr. D. N.M. 2013); In re Double G Trucking of the Arklatex, Inc., 442 B.R. 684 (Bankr. W.D. Ark. 2010) (relied on by Appellants for another point of law); In re Sturgis Iron & Metal Co., Inc., 420 B.R. 716 (Bankr. W.D. Mich. 2009); In re Russell Cave Co., Inc., 247 B.R. 656 (Bankr. E.D. Ky. 2000); In re CIS Corp., 142 B.R. 640, 643 (Bankr. S.D.N.Y. 1992); but see In re Johnson Rubber Co., Inc., 392 B.R. 779 (Bankr. N.D. Ohio 2008) (pre-petition lease not a transaction with the debtor-in-possession). Adopting the argument proffered by the Appellants would foreclose all equipment lessors from the ability to file for an administrative claim simply because a lease agreement was executed prior to the debtor's filing of the bankruptcy petition, even in cases where the estate reaped substantial financial benefits from the use of the leased equipment.

---

[7] An administrative claim under 11 U.S.C. § 503(b)(1)(A) is the appropriate vehicle for a creditor to move for payments due under the contract during the first 59 days after the debtor has filed its petition. Claims for lease payments occurring more than 60 days from the filing of the bankruptcy petition are made under 11 U.S.C. § 365(d)(5). The distinction between the 59th and 60th day is found in section 365(d)(5), which provides that the trustee has a duty to perform all obligations of the debtor (including unexpired lease payments) arising 60 days after the initial bankruptcy order is issued until the trustee assumes or rejects the lease.

Appellants are correct in noting that at least two Fifth Circuit cases state that an administrative claim must have arisen post-petition. See In re Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001); In re TransAmerican, 978 F.2d at 1416. However, neither case involved an equipment lease. In re Jack/Wade Drilling, Inc. concerned an administrative expense claim for attorney fees and costs associated with post-bankruptcy litigation. In re TransAmerican concerned a post-petition sales contract between the debtor and a supplier of oil well casings. An equipment lease is fundamentally different than a contract for goods or services. Businesses who supply goods or services to a bankruptcy estate generally do so by distinct transactions for specific goods or services. A lease involves an ongoing exchange of benefits and obligations between the lessor and lessee for a specific term.

A prima facie case for an administrative expense under section 503(b)(1) requires a "transaction with the debtor-in-possession." At least one court has found that a debtor's affirmative decision to retain leased equipment after the filing of a bankruptcy petition is sufficient to meet the broad definition of "transaction with the debtor-in-possession" required to meet the prima facie case for an administrative expense claim. See Double G Trucking, 442 B.R. at 688. In this instance, it is reasonable to consider the post-petition affirmative decision by KCS to retain possession of Premium's equipment as a transaction. During the same meeting in which KCS decided to retain the equipment, Fullop and Maupin could have decided to reject the lease to mitigate foreseeable administrative claims against the estate. Given the post-petition affirmative decision of KCS to retain Premium's valuable equipment, it would be

inequitable to foreclose Premium from seeking an administrative expense simply because the lease was executed prior to the filing of KCS' bankruptcy petition. Accordingly, this Court is satisfied that the first prong of the prima facie case has been established.

The second prong of the prima facie case requires the applicant to demonstrate that the goods and services provided to the debtor enhanced the ability of the debtor-in-possession's business to function as a going concern. See In re TransAmerican, 978 F.2d at 1416. The Bankruptcy Court found that CRTis were a benefit to the estate because the equipment increased the capacity of KCS to handle potential business that may have arisen during the pendency of the bankruptcy petition.

Appellants argue that the Bankruptcy Court erred in allowing an administrative expense because the CRTis were not an actual or necessary expense of the estate. As support, Appellants note that it is a stipulated fact that although KCS was in possession of the two leased CRTis, it did not use either of them on a job from the date of the bankruptcy petition through the sale date. It is also a stipulated fact that TRK, the purchaser of the majority of KCS' assets, declined to purchase or assume the lease of the CRTis. Because the equipment in question was not actually utilized by KCS, Appellants argue that under the plain meaning of the terms "actual" and "necessary" the leased CRTis provided no benefit to the estate. [Record Doc. 9]. Moreover, Appellants contend that the leases did not produce revenue either by their use in the field or as a portion of the assets sold to TRK. Thus, Appellants argue there is no

benefit to the estate, and priority as an administrative expense should not be provided to Premium. Id.

Premium counters that the Bankruptcy Court was correct in finding that the lease could be properly claimed as an administrative expense because KCS' access to the leased equipment to create revenue was a real benefit to the estate. The leased CRTis provided KCS with additional capacity to service its customers, and it enhanced the inherent value of the company for the upcoming sale because it was more expensive to lease similar equipment from another vendor. [Record Doc. 10 at 16]. Premium also argues that the fact that KCS did not financially profit from the equipment is inconsequential to the determination of whether there was a benefit to the estate under the current law of the Fifth Circuit. [Record Doc. 10 at 14].

Two divergent lines of cases have emerged regarding administrative expense claims for rent incurred under an equipment lease agreement. The first line of cases hold that an administrative expense claim may be allowed based on the fair and reasonable value of the rental equipment, without regard to whether the debtor actually used the equipment. See In re Bridgeport Pluming Products, 178 B.R. 563 (Bankr. M.D. Ga. 1994). Courts adopting this approach are often concerned about creating an undue burden on the creditor. Id. A creditor should have the right to assume that the debtor is utilizing the leased property for its intended purpose until the trustee rejects the lease. Id.; see In re Thompson, 788 F.2d 560 (9th Cir. 1986) (administrative expense for leased farm equipment given rental value, actual use irrelevant); In re Sturgis Iron & Metal, Inc., 420 B.R. 716 (Bankr. W.D. Mich. 2009) (rental amount under the terms

of the contract is actual and necessary expense of preserving the estate); In re Curry Printers, Inc., 135 B.R. 564 (Bankr. N.D. Ind. 1991) (administrative expense for leased photocopy machines based on fair rental value instead of actual use); In re Fred Sanders Co., 22 B.R. 902 (Bankr. E.D. Mich. 1982) (administrative expense for leased vans should be fair rental value despite debtor's nonuse).

The second line of cases have found that lease payments should only be allowed as an administrative expense to the extent the debtor has made actual use of the leased property, thus establishing a tangible benefit to the estate. See Ford Motor Credit v. Dobbins, 35 F.3d 860, 867 (4th Cir. 1994) (mere opportunity to use collateral does not give rise to an administrative claim); In re Mid Region Petroleum, Inc., 1 F.3d 1130 (10th Cir. 1993) (possession of railcars under lease agreement without use insufficient for administrative claim); In re Double G Trucking, 442 B.R. 684 (Bankr. W.D. Ark. 2010) (administrative claim allowed for two leased tractors used by farmer, but not for third inoperable tractor); In re Templeton, 154 B.R. 930 (Bankr. W.D. Tex. 1993) (administrative claim denied for tractor and plow when farmer did not use post-petition); In re Dixie Fuels, Inc., 52 B.R. 26 (Bankr. N.D. Ala. 1985) (no administrative expense allowed when debtor did not use leased trucks). The rationale underpinning this line of cases is to minimize the overall administrative expenses of the estate to protect the interests of all unsecured creditors. In re Double G Trucking, 442 B.R. at 687-88. Courts adopting this rationale recognize that a burden is placed on the lessor to timely ensure that the debtor is utilizing their leased equipment, or settle for a general unsecured claim for unused equipment. Id. at 688.

The Bankruptcy Court in this case found that when a benefit can be established for the retention of the equipment for some purpose, actual use of the equipment is not required. [Record Doc. 6 at 3]. The Bankruptcy Court arrived at this conclusion in large part because Fullop and Maupin, based on known market conditions and their reasonable business judgment, decided that KCS would benefit from the retention of the CRTis because such retention would ensure that the company could handle any new business that may have occurred.[8] The Bankruptcy Court noted that the decision was a reasonable one, and therefore, an administrative expense would be allowed.

The Fifth Circuit has not addressed whether the amount of an allowed administrative expense should be based on the fair rental value of the leased equipment due to tangible and intangible benefits to the estate, or if actual use by the debtor is required. In the absence of a bright line rule, this Court will affirm the

---

[8] Appellants argue that the Bankruptcy Court abrogated its duty to determine if an administrative expense was proper by relying on the business judgment of Maupin and Fullop instead of making its own decision as to whether there was a benefit to the estate. [Record Doc. 9 at 15]. This Court disagrees. The Bankruptcy Court did not blindly defer to the business judgment of Maupin and Fullop. Rather, it cited to ATP Oil & Gas Corp., which explains that the debtor-in-possession is much better situated than third party providers to make business judgment decisions regarding which services are beneficial to the estate. ATP Oil & Gas Corp., 2014 WL 1047818, at 6. Denying an administrative expense when the debtor based a decision on its business judgment would require vendors to constantly question whether its services were a benefit to the estate. Id. This would limit the willingness of vendors to work with the estate and would be detrimental to the goal of rehabilitating the estate. Id. The Bankruptcy Court made a finding that Maupin and Fullop's business judgment was reasonable, and it declined to second-guess that judgment in hindsight.

Appellants also argue that when a court gives deference to the business judgment of a debtor it must do so only after notice is provided to all other creditors and a hearing is held. [Record Doc. 9 at 16]. This Court disagrees, and finds that no such requirement exists in the context of an application for an administrative expense covering the first 59 days post-petition.

decision of the Bankruptcy Court. Although a direct profit cannot be contributed to the leased equipment, this Court finds that the Leased CRTis provided intangible benefits to the estate.

KCS made an affirmative business decision at the highest level of the company to retain the two pieces of equipment so that KCS would have unfettered access to the equipment to maintain their business after filing for bankruptcy. Fullop and Maupin presumably were in the best position to know whether the equipment would benefit the estate, and they felt that it would. The fact that the two local managers of the Pennsylvania and Colorado Divisions did not take advantage of the available equipment is immaterial. Although the CRTis did not produce additional profits for the estate, their retention did provide a benefit to the estate in the form of increased capacity to respond to potential customer demand. Moreover, if one or more of the CRTis owned by KCS experienced mechanical problems, Premium's CRTis were on site and ready to be deployed. A financial benefit to the estate is not required for an administrative expense to be approved. See H.L.S. Energy, 151 F.3d at 438; In re ATP Oil & Gas, 2014 WL 1047818, at 5. An administrative expense may be allowed when an estate receives "other less readily calculable benefits, such as the ability to continue to conduct business as usual." In re TransAmerican, 978 F.2d at 1420. Having found that the Leased CRTis provided an intangible benefit to KCS, the Bankruptcy Court's award of an administrative expense claim to Premium is affirmed.

## CONCLUSION

For the reasons assigned herein, the order of the Bankruptcy Court granting Premium's claim for an administrative expense is hereby **AFFIRMED**.

**THUS DONE AND SIGNED**, this ____ day of March, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE